1  Matthew C. Helland, CA State Bar No. 250451
   Helland@nka.com
2  NICHOLS KASTER, LLP
   One Embarcadero Center, Suite 720
3  San Francisco, CA  94111
   Telephone: (415) 277-7235
4  Facsimile: (415) 277-7238

5
   Justin M. Swartz, NY State Bar No. 591849
6  jms@outtengolden.com
   (admitted **pro hac vice**)
7  Rachel Bien, NY State Bar No. 4439402
   rmb@outtengolden.com
8  (admitted **pro hac vice**)
   OUTTEN & GOLDEN LLP
9  3 Park Avenue, 29th Floor
   New York, New York 10016
10 Telephone:  (212) 245-1000

11
   Attorneys for Plaintiffs and the Proposed Classes
12

13              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
14

15 | Gary Gee, Roxanne Mazarakis, and Jody Soto, individually, on behalf of other similarly situated, and on behalf of the general public, | Case No. 3:10-CV-01509-RS |
|---|---|
16 | | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL CLASS CERTIFICATION AND DISTRIBUTION OF JUDICIAL NOTICE; MEMORANDUM OF LAW AND POINTS OF AUTHORITIES** |
17 | Plaintiffs, | |
18 | vs. | |
19 | SunTrust Mortgage, Inc., and DOES 1-50, inclusive, | |
20 | Defendants. | **Date:** December 23, 2010 <br> **Time:** 1:30 p.m. <br> **Courtroom:** 17th Floor, Courtroom 3 <br> **Judge:** Richard Seeborg |

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2    Please take notice that on December 23, 2010, at 1:30 p.m.., in the courtroom of the

3    Honorable Richard Seeborg of the above-mentioned Court, Plaintiffs Gary Gee, et al., will and

4    hereby do move for an order that this case will proceed as a collective action pursuant to the Fair

5    Labor Standards Act, 29 U.S.C. § 216(b).

6    Plaintiffs move for the conditional certification of the following collective:

7    All Persons who are, have been, or will be employed by Defendant SunTrust

8    Mortgage, Inc. as Mortgage Underwriters within the United States at any time

9    within three years of the filing of this Complaint to the final disposition of this

10   case.

11   Plaintiffs also move for production within 10 business days of a class list in excel format

12   containing each underwriter's (1) name, (2) job title, (3) last known address and telephone

13   number, (4) last known personal email address, (5) dates of employment, (6) location of

14   employment, (7) employee number, and (8) social security number (last four digits only).

15   Plaintiffs also move for authorization to distribute judicial notice.

16   This motion is based upon: the notice of motion and motion; accompanying memorandum

17   of points and authorities; and accompanying declarations and exhibits.

18

19

20

21

22

23

24

25

26

27

28

-i-

**PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .......................................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................................... 1

       A.  SunTrust Mortgage Underwriters Are Engaged In The Production Of Loans ...... 1

       B.  Underwriters Do Not Set Credit Policy or Draft Underwriting Guidelines........... 3

       C.  Underwriters are Subject to Uniform Quality Control Procedures ....................... 4

       D.  Underwriters Were Reclassified From Exempt to Non-Exempt After Plaintiffs Filed This Lawsuit ............................................................................................... 4

       E.  Underwriters Are Similar With Respect to Their Position In The Company And Their Job Responsibilities ...................................................................................... 5

III.   ARGUMENT ................................................................................................................. 6

       A.  Because Discovery Is Incomplete, This Case Is At The First Stage Of The FLSA's Two-Step Certification Process............................................................................... 8

       B.  Plaintiffs Easily Meet The Standard To Show "Some Factual Basis" For Their Contention That Employees Are Similarly-Situated And Therefore Merit First Stage Conditional Certification And Court-Facilitated Notice ............................ 9

            i.  SunTrust Mortgage Underwriters are similarly situated because their job performance is judged based on their production ................................... 10

           ii.  SunTrust Mortgage underwriters are similarly situated because they are rewarded based on production ................................................................. 11

          iii.  SunTrust Mortgage underwriters are similarly situated in that they must perform their job duties in adherence to the Credit Administration Department's Credit Policy .................................................................... 12

           iv.  SunTrust Mortgage underwriters are similarly situated because they perform their job duties subject to the same quality control audits ......... 12

            v.  SunTrust Mortgage underwriters are similarly situated because they are all subject to the same policy, that "[e]liminating broken loans is the number one priority of the mortgage company." ................................................. 12

-ii-

vi.   SunTrust Mortgage underwriters are similarly situated because they

perform the same job duties and were classified the same ......................13

C.  This Case Is Appropriate For Judicial Notice ........................................................13

i.   The Court should order distribution of Plaintiffs' Proposed Notice ........14

ii.   The Court should order production of contact information for all

underwriters ...........................................................................................15

IV.   CONCLUSION ...............................................................................................................16

**PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE**

1

**<u>TABLE OF AUTHORITIES</u>**

2

**<u>Statutes</u>**

3

29 U.S.C. § 216(b) ................................................................................................ 6

4

**<u>Federal Regulations</u>**

5

29 C.F.R. § 541.201 .......................................................................................... 10

6

**<u>Cases</u>**

7

<u>Adams v. Inter-Con Security Sys., Inc.</u>, 242 F.R.D. 530 (N.D. Cal. 2007) ............... 7, 8

8

<u>Bailey v. Ameriquest Mortgage Co.</u>, 2002 WL 100388 (D. Minn.) ............................ 6

9

<u>Brown v. Money Tree Mortg., Inc.</u>, 222 F.R.D. 676 (D.Kan. 2004) .......................... 7

10

<u>Camper v. Home Quality Mgmt., Inc.</u>, 200 F.R.D. 516 (D. Md. 2000) ........................ 9

11

<u>Centurioni v. San Francisco</u>, 2008 WL 295096 (N.D. Cal. 2008) ............................ 6, 7

12

<u>Davis v. J.P. Morgan Chase & Co.</u>, 587 F.3d 529 (2d Cir. 2009) .............. 1, 10, 11, 12

13

<u>DeAsencio v. Tyson Foods, Inc.</u>, 130 F.Supp.2d 660 (E.D. Pa. 2001) ........................ 9

14

<u>Garcia v. Salamanca Group</u>, 2008 WL 818532 (N.D. Ill. Mar. 24, 2008) ................... 14

15

<u>Gerlach v. Wells Fargo & Co.</u>, 2006 WL 824652 (N.D. Cal. 2006) ..................... 6, 7, 8

16

<u>Gilbert v. Citigroup, Inc.</u>, 2009 WL 424320 (N.D. Cal. 2009) ............................ 9, 12

17

<u>Grayson v. K-Mart Corp.</u>, 79 F.3d 1086 (11th Cir. 1996) .................................... 6, 13

18

<u>Guzman v. Varco Intern., Inc.</u>, 2002 WL 32639237 (S.D. Tex.) ................................ 9

19

<u>Helton v. K-Mart</u>, 519 U.S. 987 (1996) ............................................................... 6

20

<u>Hill v. R+L Carriers, Inc.</u>, 690 F. Supp. 2d 1001 (N.D. Cal. 2010) ................... 7, 8, 9, 12

21

<u>Hipp v. Liberty National Life Ins. Co.</u>, 252 F.3d 1208 (11th Cir. 2001) ...................... 7

22

<u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165 (1989) ...................... 6, 7, 12, 13, 14

23

<u>Kairy v. Supershuttle Int'l, Inc.</u>, 2009 WL 1457971 (N.D. Cal. May 21, 2009) ............ 7

24

<u>Kalish v. High Tech. Inst.</u>, 2005 WL 1073645 (D. Minn. Apr. 22, 2005) ................... 13

25

<u>Leuthold v. Destination America, Inc.</u>, 224 F.R.D. 462 (N.D. Cal. 2004) ............ 6, 7, 8

26

<u>Lewis v. Wells Fargo & Co.</u>, 669 F. Supp. 2d 1124 (N.D. Cal. 2009) ................. 7, 9, 12

27

<u>Morton v. Valley Farm Transport, Inc.</u>, 2007 WL 1113999 (N.D. Cal. 2007) ............... 9

28

<u>Newton v. Schwarzenegger</u>, 2010 WL 2280532 (N.D. Cal. 2010) ......................... 7, 8

_Prentice v. Fund for Public Interest Research, Inc._, 2007 WL 2729187 (N.D. Cal. 2007)........ 7, 9

_Redman v. U.S. West Bus. Res., Inc._, 153 F.3d 691 (8th Cir. 1998).............................................. 13

_Rees v. Sousa's Milk Transportation Corp._, 2006 WL 738987 (E.D.Cal. 2006) ...................... 8, 9

_Romero v. Producers Dairy Foods, Inc._, 235 F.R.D. 474 (E.D. Cal. 2006) .................................. 14

_Schewd v. Gen. Elec. Co._, 159 F.R.D. 373 (N.D.N.Y. 1995)........................................................ 6

_Thiessen v. GE Capital Corp._, 267 F.3d 1095 (10th Cir.2001) ...................................................... 8

_Veliz v. Cintas, Corp._, 2004 WL 2623909 (N.D. Cal. 2004)........................................................ 14

_Wynn v. National Broadcasting Co., Inc._, 234 F.Supp.2d 1067 (C.D. Cal. 2002) ........................ 7

**PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE**

## MEMORANDUM OF LAW AND POINTS OF AUTHORITIES

### I.   INTRODUCTION

Plaintiffs come before the Court seeking conditional certification under the Fair Labor Standards Act ("FLSA") and prompt issuance of judicial notice to SunTrust Mortgage underwriters.   These employees' claims are growing smaller by the day, because SunTrust Mortgage universally changed the classification of its mortgage underwriters from "exempt" to "non-exempt" after Plaintiffs filed this case.   As outlined below, this case should be conditionally certified because SunTrust Mortgage underwriters perform similar job duties, subject to the same production requirements, and because they all serve the same role within the company.

SunTrust Mortgage underwriters do not create credit policy.   They do not decide which products SunTrust Mortgage will offer.   They are reviewed, compared and contrasted to other mortgage underwriters on a production-based metric.   Their performance is subject to review by the same quality control auditors.   Under Davis v. J.P. Morgan Chase & Co., 587 F.3d 529 (2d Cir. 2009), all of these facts are of central importance in this case.   Because SunTrust Mortgage underwriters are similarly situated with respect to these important facts, the Court should grant this motion.   Further, to ensure that employees are aware of their right to join this case, the Court should authorize judicial notice in the form attached as Helland Decl. Exh. M, and should order Defendant to produce the requested contract information for potential Plaintiffs.

### II.   FACTUAL BACKGROUND

#### A. SunTrust Mortgage Underwriters Are Engaged In The Production Of Loans.

Defendant SunTrust Mortgage, Inc. ("SunTrust Mortgage") is in the business "of selling mortgage loans." (Rosenberg Dep. at 30.)[1]  SunTrust Mortgage Underwriters are organized into three channels: retail, wholesale broker, and correspondent.   (Rosenberg Depo. at 61-62.) Starting in 2008, underwriters reported up to a National Underwriting Manager.   (Rosenberg Depo. at 78-79, 81-82; Depo. Exhs. 8-10.)[2]  For a time in 2008 the person at the top of the

---

[1] The deposition transcripts referenced herein are attached as Helland Declaration Exhibits A-D, as itemized in the Helland Declaration.

[2] The documentary exhibits referenced herein are attached as Helland Declaration Exhibits E-N, as itemized in the Helland Declaration.

reporting chain was called the "National Wholesale <u>Production</u> Manager." (Depo. Exh. 7 at STM-002174) (emphasis added.)

A SunTrust Mortgage Underwriter's job is to help SunTrust Mortgage produce mortgage loans. SunTrust Mortgage underwriters review mortgage loan applications to ensure they conform to certain guidelines and policies. (Gee Decl. ¶ 3; Mazarakis Decl. ¶ 3; Lewis Decl. ¶ 3; Corbin Decl. ¶ 3; Dillard Dec. ¶ 3.)[3]   Underwriters are required to review a certain number of loan applications each day. (Waterman Depo. at 159-60; McMahon Depo. at 31-32; Grant Depo. at 62-63; Gee Decl. ¶ 4; Mazarakis Decl. ¶ 4; Lewis Decl. ¶ 4; Corbin Decl. ¶ 4; Dillard Dec. ¶ 4.) Failure to meet this requirement could lead to disciplinary action taken against the underwriter, or performance counseling. (Depo. Exh. 27; Waterman Depo. at 162; McMahon Depo. at 60; Grant Depo. at 71.) Underwriting managers review monthly production reports to assess underwriters' performance. (Waterman Depo. at 162-63; McMahon Depo. at 32; Grant Depo. at 69-70.) For example, SunTrust Mortgage distributes an "Underwriter Productivity Report." (Helland Decl. Exh. M.) The report includes an "Underwriting Leaderboard by Channel," which tracks the decisions per underwriter per day of each channel. (Depo. Exh. 32.) The report also breaks down the "leader board" by branch, and by individual underwriter. (Depo. Exh. 32) SunTrust Mortgage distributes these "leaderboards" to all underwriting managers and sales managers. (Waterman Depo. at 163.)

SunTrust has an incentive compensation plan in place, the purpose of which is to "reward high mortgage production." (Depo. Exh. 30 at STM-003358.) The plan is "driven by production." (Depo. Exh. 29 at STM-003620.) SunTrust's incentive compensation program provides bonuses to underwriters based on their volume of loans for the month. (Depo. Exh. 30 at STM-003360-61.) Underwriters in all channels are eligible for incentive pay based on their production. (Depo. Exh. 30; Waterman Depo. at 153-54; McMahon Depo. at 58; Grant Depo. at 83-84.) Starting in 2009, there was an underwriter-specific incentive plan that applied to all underwriters. (Depo. Exh. 29, Waterman Depo. at 153; Grant Depo. at 83-84.)

---

[3] Plaintiffs' Declarations are attached as Helland Declaration Exhibit Q.

### B. Underwriters Do Not Set Credit Policy or Draft Underwriting Guidelines

SunTrust Mortgage has a Credit Administration Department. Credit Administration "is responsible for setting credit policy" for SunTrust Mortgage. (Rosenberg Depo. at 42.) SunTrust Mortgage describes the purpose of the Credit Administration Department as follows:

> SunTrust Mortgage Credit Administration is responsible for the strategic development, maintenance and enforcement of credit guidelines within STI corporate policy. STI sets all credit policy for the company.

(Depo. Exh. 13 at STM-001015.) The Credit Administration Department is responsible for "setting the risk guidelines that the company is willing to accept . . . ." (Rosenberg Depo. at 43-44.)

SunTrust Mortgage is very clear about the differences between Credit Administration and underwriting. Underwriters are not the ones designing credit policy. (Rosenberg Depo. at 53; Gee Decl. ¶ 4; Mazarakis Decl. ¶ 4; Lewis Decl. ¶ 4; Corbin Decl. ¶ 4; Dillard Dec. ¶ 4.) Underwriters do not draft the underwriting guidelines; the "resource center" does that. (McMahon Depo. at 13, 15; Gee Decl. ¶ 3; Mazarakis Decl. ¶ 3; Lewis Decl. ¶ 3; Corbin Decl. ¶ 3; Dillard Dec. ¶ 3.) Underwriting <u>managers</u> do not even draft the underwriting guidelines. (McMahon Depo. at 15.) Underwriters do not determine which products SunTrust Mortgage is going to offer to the marketplace. (Gee Decl. ¶ 3; Mazarakis Decl. ¶ 3; Lewis Decl. ¶ 3; Corbin Decl. ¶ 3; Dillard Dec. ¶ 3.) On the same page of the same presentation quoted <u>supra</u>, SunTrust Mortgage contrasts Credit Administration and Underwriting by describing Underwriting as follows:

> Underwriting is responsible for processes procedures and controls to ensure strict adherence to underwriting credit policy and does not engage in credit policy overrides or engage in credit policy.

(Depo. Exh. 13 at STM-001015.) "[C]redit policy sets the standards for what SunTrust Mortgage [sic] flavor is for borrowers and the underwriter must adhere to those policies." (Grant Depo. at 52.)

**C. Underwriters are Subject to Uniform Quality Control Procedures**

In addition to establishing SunTrust Mortgage's credit policy, the Credit Administration department at corporate also performs a quality control function over underwriters. (Rosenberg Depo. at 88.) Underwriter quality control is very important to SunTrust Mortgage:

> The average loan repurchased due to underwriting defects cost the company over $100,000.
>
> In 2009, repurchases cost the company $400,000,000.

(Depo. Exh. 17 at STM-000896.)

The purpose of the corporate quality control audit is to "ensure that loans are underwritten within – within guidelines and underwritten correctly." (Rosenberg Depo. at 89.) If the audit finds problems with the loan – that it is not within guidelines or underwritten correctly – the result is called an "ineligible audit." (Waterman Depo. at 23.) An ineligible audit is also referred to as a "broken loan" or an "unsaleable" loan. (Waterman Depo. at 23.) SunTrust Mortgage has a few catch phrases which crystallize the importance of adherence to underwriting guidelines. According to SunTrust Mortgage's President, "[e]liminating broken loans is the number one priority of the mortgage company." (Depo. Exh. 17 at STM-000898.) Along the same lines, SunTrust Mortgage's company policy is that "there will be no broken loans." (Depo. Exh. 13 at STM-001030.)

**D. Underwriters Were Reclassified From Exempt to Non-Exempt After Plaintiffs Filed This Lawsuit**

Historically, SunTrust Mortgage has universally classified its loan officers as exempt from the overtime requirements of state and federal law and paid them a salary. (Waterman Depo. at 149; McMahon Depo. at 55, 63; Grant Depo. at 80-81, 84-84.) After Plaintiffs filed this lawsuit, SunTrust Mortgage reclassified its underwriters as non-exempt employees. (Waterman Depo. at 158-59; McMahon Depo. at 63-64; Grant Depo. at 84-85.) SunTrust Mortgage now pays overtime. (Waterman Depo. at 159; McMahon Depo. at 64; Grant Depo. at 85.)

### E. Underwriters Are Similar With Respect to Their Position In The Company And Their Job Responsibilities.

With respect to relevant characteristics, underwriters who work for SunTrust Mortgage are similar. For example, the Credit Administration Department creates the credit policy for the entire company. (Depo. Exh. 13 at STM-001015.) Underwriters do not design, alter, or deviate from the company's established credit policy. (Depo. Exh. 13 at STM-001015; Rosenberg Depo. at 53.) Underwriters do not draft the guidelines they follow as they work. (McMahon Depo. at 13, 15.) "[C]redit policy sets the standards for what SunTrust Mortgage [sic] flavor is for borrowers and the underwriter must adhere to those policies." (Grant Depo. at 52.)

All underwriters are reviewed and ranked according to their production. Monthly production reports circulated to underwriting managers rank underwriters, channels, and branches based on their "adjusted decisions per day." (Depo. Exh. 32.) Underwriters are subject to performance counseling for failing to hit their production goals. (Depo. Exh. 27; Waterman Depo. at 162; McMahon Depo. at 60; Grant Depo. at 71.) The production-based incentive program applies to all underwriters. (Depo. Exh. 29 at STM-003619.)[4]

Additionally, underwriters across all channels are subject to quality control review from the Credit Policy department. (Waterman Depo. at 130-31; McMahon Depo. at 40; Grant Depo. at 64.) The directive from SunTrust Mortgage's president is that "there shall be no broken loans." (Depo. Exh. 13 at STM-001030.) Further, "[e]liminating broken loans is the number one priority of the mortgage company." (Depo. Exh. 17 at STM-000898.)

Lastly, prior to this lawsuit SunTrust Mortgage underwriters were universally classified as exempt from overtime. (Waterman Depo. at 149; McMahon Depo. at 55, 63; Grant Depo. at 80-

---

[4] Starting in the fourth quarter of 2009, there has been group of correspondent underwriters performing a correspondent-specific audit function on already-closed loans SunTrust has purchased. (Grant Depo. at 87-88, 93.) There are approximately four underwriters at a time performing this function, on a rotational basis. (Grant Depo. at 86-87.) The incentive program did not apply to correspondent underwriters while they are performing that function. (Grant Depo. at 83-84.) After they rotate out of that function, however, the program applies to them once more. (Grant Depo. at 90.)

**PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE**

81, 84-84.)   As of July 12, 2010, they have been universally classified as non-exempt from overtime.  (Waterman Depo. at 158-59; McMahon Depo. at 63-64; Grant Depo. at 84-85.)

### III.   ARGUMENT

Plaintiffs seek conditional certification and court-facilitated notice to all of Defendant's mortgage underwriters in this collective action pursuant to the FLSA, 29 U.S.C. § 216(b).  The FLSA specifically contemplates plaintiffs pursuing their claims collectively, stating that "[a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly-situated."  29 U.S.C.  §216(b).  The collective action procedure allows for efficient adjudication of similar claims, because "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

An FLSA "collective action" under section 216(b) is defined by three important features. First, in order to participate in a collective action, an employee must "opt in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court. Hoffmann-La Roche, 493 U.S. at 168; Centurioni v. San Francisco, 2008 WL 295096, at *1 (N.D. Cal. 2008); Gerlach v. Wells Fargo & Co., 2006 WL 824652 at *1 (N.D. Cal. 2006).

Second, the statute of limitations runs on each employee's claim until his individual opt-in form is filed with the court. See Grayson v. K-Mart Corp., 79 F.3d 1086, 1106 (11th Cir. 1996), cert. denied, Helton v. K-Mart, 519 U.S. 987 (1996) (holding that the statute of limitations ceases to run only when each employee files a consent form). Judicial notice promotes the remedial purpose of Section 216(b) by preventing the erosion of claims due to the FLSA's statute of limitations.  See Schewd v. Gen. Elec. Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995) ("even where later discovery proves the putative class members to be dissimilarly situated, notice to those preliminary identified as potential plaintiffs prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]"); see also Bailey v. Ameriquest Mortgage Co., 2002 WL 100388, at *2 (D. Minn.) (recognizing that notice to potential class members promotes the

-6-

1    remedial purpose of the FLSA). As a result, the longer Defendants are able to delay court-

2    facilitated notice, the more claims fall victim to the statute of limitations.

3        Third, to serve the "broad remedial purpose" of the FLSA, courts can order notice to other

4    potential, similarly-situated employees to inform them of this opportunity to "opt into" the case.

5    Hoffmann-La Roche, 493 U.S. at 173; Leuthold v. Destination America, Inc., 224 F.R.D. 462,

6    466-467 (N.D. Cal. 2004).

7        In light of these three important features, Court-supervised notice is a preferred method

8    for managing this notification process for several reasons: it avoids "multiplicity of duplicative

9    suits;" it allows the court to set deadlines to advance the disposition of an action; it furthers the

10   "wisdom and necessity for early judicial intervention" in multi-party actions, and it protects

11   plaintiffs' claims from expiring under the statute of limitations.  Hoffmann-La Roche, 493 U.S. at

12   171-73; Adams v. Inter-Con Security Sys., Inc., 242 F.R.D. 530, 542 (N.D. Cal. 2007); Prentice

13   v. Fund for Public Interest Research, Inc., 2007 WL 2729187, at *2 (N.D. Cal. 2007).

14             **A.  Because Discovery Is Incomplete, This Case Is At The First Stage Of The**

15                  **FLSA's Two-Step Certification Process**

16       "Following the majority approach to determine whether plaintiffs are 'similarly situated,'

17   district courts in this circuit have used the ad hoc two-step approach involving initial notice to

18   prospective plaintiffs followed by a final evaluation whether such plaintiffs are similarly

19   situated." Newton v. Schwarzenegger, 2010 WL 2280532, *3 (N.D. Cal. 2010); see, e.g., Hill v.

20   R+L Carriers, Inc., 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010); Lewis v. Wells Fargo & Co.,

21   669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009); Kairy v. Supershuttle Int'l, Inc., 2009 WL 1457971

22   (N.D. Cal. May 21, 2009);  Centurioni, 2008 WL 295096, at *1; Leuthold, 224 F.R.D. at 466-

23   467; Gerlach, 2006 WL 824652 at *2; Wynn v. National Broadcasting Co., Inc., 234 F.Supp.2d

24   1067, 1067 (C.D. Cal. 2002);  Hipp v. Liberty National Life Ins. Co., 252 F.3d 1208, 1219 (11th

25   Cir. 2001); Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 680 (D.Kan. 2004).   "The court

26   first makes a determination at the 'notice stage' of whether plaintiffs are similarly situated.

27   Newton, 2010 WL 2280532, *3.  "Courts usually grant certification at this stage." Centurioni,

28   2008 WL 295096, *2.  "At the conclusion of discovery the court makes a second determination,

**PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE**

1   usually on the defendant's motion for decertification, utilizing a stricter standard of 'similarly
2   situated.'" <u>Newton</u>, 2010 WL 2280532, *3.

3       The California Federal District Courts particularly emphasize that first-stage analysis is
4   applied until discovery is <u>complete</u>. <u>Newton</u>, 2010 WL 2280532, *3; <u>Hill</u>, 690 F. Supp. 2d at
5   1009; <u>Lewis</u>, 669 F. Supp. 2d at 1127; <u>Adams</u>, 242 F.R.D. at 539, <u>Gerlach</u>, 2006 WL 824652 at
6   *2; <u>Rees</u>, 2006 WL 738987 at *3; <u>Leuthold</u>, 224 F.R.D. at 467. Even where "extensive"
7   discovery has occurred, including "dozens of depositions" and the exchange of "volumes of
8   paper" discovery, this Court has steadfastly applied the first-tier analysis. <u>Gerlach</u>, 2006 WL
9   824652 at *2; <u>Rees v. Sousa's Milk Transportaiton Corp.</u>, 2006 WL 738987 at *3 (E.D.Cal.
10   2006); <u>Leuthold</u>, 224 F.R.D. at 467. Such application is the "most equitable means of
11   proceeding." <u>Leuthold</u>, 224 F.R.D. at 468.

12       Needless to say, the parties are not at or near the conclusion of discovery in this matter.
13   Indeed, the parties have just begun. Plaintiffs have deposed corporate designees in response to a
14   deposition notice under Rule 30(b)(6), but the 30(b)(6) deposition is not complete. (Helland
15   Decl. ¶ 2.) Each party has responded to an initial set of written discovery. (Helland Decl. ¶ 4.)
16   Defendants have not noticed depositions of any Plaintiffs. (<u>Id</u>.) As such, the second-tier analysis
17   is inapplicable here, and the lenient first-stage analysis favors granting conditional certification.

18       **B. Plaintiffs Easily Meet The Standard To Show "Some Factual Basis" For**
19       **Their Contention That Employees Are Similarly-Situated And Therefore**
20       **Merit First Stage Conditional Certification And Court-Facilitated Notice.**

21       At this initial stage, to obtain conditional class certification, Plaintiffs need only establish
22   a "that there is some factual basis beyond the mere averments in their complaint for the class
23   allegations." <u>Adams</u>, 242 F.R.D. 530, 536. The initial determination "is subject to a fairly lenient
24   standard requiring 'nothing more than substantial allegations that the putative class members
25   were together the victims of a single decision, policy, or plan.'" <u>Newton</u>, 2010 WL 2280532, *3,
26   citing <u>Thiessen v. GE Capital Corp.</u>, 267 F.3d 1095, 1103 (10th Cir.2001), cert. denied, 536 U.S.
27   934, (2002). The burden on the Plaintiffs to allege some "colorable" or "reasonable" basis that
28   they and the putative class are "similarly situated" is "not heavy," and may be met by detailed

-8-

1    allegations supported by a very small number of sworn statements. <u>Prentice</u>, 2007 WL 2729187 at

2    *2 (three declarations); <u>Morton v. Valley Farm Transport, Inc.</u>, 2007 WL 1113999 (N.D. Cal.

3    2007) (four declarations); <u>Rees</u>, 2006 WL 738987 at **3-4 (two declarations sufficient);

4    <u>DeAsencio v. Tyson Foods, Inc.</u>, 130 F.Supp.2d 660, 663 (E.D. Pa. 2001) (four affidavits);

5    <u>Camper v. Home Quality Mgmt., Inc.</u>, 200 F.R.D. 516, 529 (D. Md. 2000) (four declarations);

6    <u>Guzman v. Varco Intern., Inc.</u>, 2002 WL 32639237 at *3 (S.D. Tex.) (three plaintiffs'

7    statements).

8         As an example of the lenient threshold which suffices to obtain conditional class

9    certification at this stage, Judge Claudia Wilken's decision in <u>Lewis</u> is instructive, in that she held

10   that the plaintiffs were similarly situated with respect to their FLSA claims "because they share a

11   job description, were uniformly classified as exempt from overtime pay by Defendant and

12   perform similar job duties."  <u>Lewis</u>, 669 F. Supp. 2d at 1128; <u>see also</u> <u>Hill</u>, 690 F.Supp.2d 1009-

13   10 (uniform classification supports conditional certification); <u>Gilbert v. Citigroup, Inc.</u>, 2009 WL

14   424320 (N.D. Cal. 2009) (same).  Plaintiffs easily meet the lenient first stage standard.

15                    **i.  SunTrust Mortgage Underwriters are similarly situated because their**

16                    **job performance is judged based on their production**

17         SunTrust Mortgage underwriters are all subject to a single "policy" or "plan" in which

18   their performance of their job duties is reviewed and judged based on their production.

19   (Waterman Depo. at 159-60; McMahon Depo. at 31-32; Grant Depo. at 62-63; Gee Decl. ¶ 4;

20   Mazarakis Decl. ¶ 4; Lewis Decl. ¶ 4; Corbin Decl. ¶ 4; Dillard Dec. ¶ 4.)  Each and every month,

21   SunTrust Mortgage distributes a "leaderboard" that ranks underwriters against each other, ranks

22   branches against other branches, and ranks channels against other channels.  (Depo. Exh. 32.)

23   Using one simple metric – "Adjusted Decisions Per UW Per Day" – SunTrust Mortgage

24   management is able to rank review, compare and contrast underwriter versus underwriter, branch

25   versus branch, and channel versus channel.  Because each underwriter's job performance can be

26   measured on a monthly report through this one metric, all underwriters are similarly situated.

27         The single "policy" or "plan" of reviewing underwriters based on production is of central

28   importance to this case.  In the leading case on mortgage underwriter classification, the Second

-9-

Circuit found that underwriters at Chase were misclassified because "[t]heir work is not related either to setting 'management policies' nor to 'general business operations' . . . but rather concerns the 'production' of loans—the fundamental service provided by the bank." Davis v. J.P. Morgan Chase & Co., 587 F.3d 529, 534 (2nd Cir. 2009)[5].  As support for the finding that underwriters were engaged in production, the Court noted that "[u]nderwriters were evaluated not by whether loans they approved were paid back, but by measuring each underwriter's productivity in terms of 'average of total actions per day' and by assessing whether the underwriters' decisions met the Chase credit guide standards."  Id.  Accordingly, SunTrust Mortgage's central "policy" or "plan" of reviewing and ranking underwriters based on their production is a key to this case.  All underwriters are similarly situated in this regard.

> **ii.  SunTrust Mortgage underwriters are similarly situated because they are rewarded based on production.**

SunTrust Mortgage underwriters are also subject to an incentive compensation plan – a single "policy" or "plan" that rewards them for high production.  (Depo. Exh. 30 at STM-003358.)  The plan is "driven by production."  (Depo. Exh. 29 at STM-003620.)  SunTrust's incentive compensation program provides bonuses to underwriters based on their volume of loans for the month.  (Depo. Exh. 30 at STM-003360-61.)  Since 2009, there has been an underwriter-specific incentive plan that applies to all underwriters.  (Depo. Exh. 29, Waterman Depo. at 153; Grant Depo. at 83-84.)

As noted above, the emphasis that SunTrust Mortgage places on production is central to this case.  In Davis, the Second Circuit found support for its holding in the fact that "[u]nderwriters were occasionally paid incentives to increase production, based on factors such as the number of decisions underwriters made."  Davis, 587 F.3d at 534-35.  Because SunTrust Mortgage underwriters are subject to a single "policy" or "plan" that rewards them based on production, they are similarly situated.

---

[5] Quoting 29 C.F.R. § 541.201 ("To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers.")

-10-

           **iii.  SunTrust Mortgage underwriters are similarly situated in that they must perform their job duties in adherence to the Credit Administration Department's Credit Policy.**

The Credit Administration Department is responsible for "setting the risk guidelines that the company is willing to accept . . . ." (Rosenberg Depo. at 43-44.) Underwriters do not design credit policy and they do not draft underwriting guidelines. (Rosenberg Depo. at 53; McMahon Depo. at 13, 15.) SunTrust Mortgage's credit policy is a single "decision, policy or plan" to which all SunTrust Mortgage underwriters are subject; all underwriters must perform their job duties within the bounds of SunTrust Mortgage's credit policy. "[C]redit policy sets the standards for what SunTrust Mortgage [sic] flavor is for borrowers and the underwriter must adhere to those policies." (Grant Depo. at 52.) Plaintiffs are similarly situated in this regard, which is significant in the context of this case. See Davis, 587 F.3d at 535 ("It is undisputed that the underwriters played no role in the establishment of Chase's credit policy. Rather, they were trained only to apply the credit policy as they found it, as it was articulated to them through the detailed Credit Guide.")

           **iv.  SunTrust Mortgage underwriters are similarly situated because they perform their job duties subject to the same quality control audits.**

SunTrust Mortgage's quality control audit is another single policy to which all SunTrust Mortgage underwriters are subject. (Waterman Depo. at 130-31; McMahon Depo. at 40; Grant Depo. at 64.) The Credit Administration department at corporate performs quality control audits. (Rosenberg Depo. at 88.) SunTrust Mortgage underwriters are therefore similarly situated because the same Credit Administration department at corporate performs the same quality control review on all underwriters.

           **v.  SunTrust Mortgage underwriters are similarly situated because they are all subject to the same policy, that "[e]liminating broken loans is the number one priority of the mortgage company."**

SunTrust Mortgage's president proclaims that ""[e]liminating broken loans is the number one priority of the mortgage company." (Depo. Exh. 17 at STM-000898.) A broken loan is a

**PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE**

loan that is unsaleable.  (Waterman Depo. at 23.)  It would result in an "ineligible audit" from the Credit Administration Department.  (Waterman Depo. at 23.)  It is a goal of all underwriters to ensure that their loans are saleable.  (Waterman Depo. at 24.).  When the Credit Authorization Department reviews loans to make sure they are saleable, it is making sure the loans are underwritten "within guidelines and underwritten correctly."   (Rosenberg Depo. at 89.) Accordingly, all SunTrust Mortgage underwriters are similarly situated in that they must underwrite loans "within guidelines" and "correctly," so that there are no "broken loans."  See Davis, 587 F.3d at 534 (underwriters reviewed according to whether their decisions met corporate credit guide standards).

### vi.  SunTrust Mortgage underwriters are similarly situated because they perform the same job duties and were classified the same.

Plaintiffs meet their "similarly situated" showing where "they share a job description, were uniformly classified as exempt from overtime pay by Defendant and perform similar job duties."  Lewis, 669 F. Supp. 2d at 1128; see also Hill, 690 F.Supp.2d 1009-10 (uniform classification supports conditional certification); Gilbert, 2009 WL 424320 (N.D. Cal. 2009) (same).  Here, Plaintiffs meet that standard.  Plaintiffs all review loan applications to ensure they conform to SunTrust Mortgage's detailed policies and guidelines.  (Gee Decl. ¶ 3; Mazarakis Decl. ¶ 3; Lewis Decl. ¶ 3; Corbin Decl. ¶ 3; Dillard Dec. ¶ 3.)  SunTrust Mortgage underwriters are to underwrite loans with the company's "number one priority" in mind – to eliminate broken loans.  Their job performance is reviewed based on a universal productivity metric and a common quality control review at corporate.

Further, up until July 12, 2010, all mortgage underwriters were universally classified as exempt.  On July 12, 2010, all mortgage underwriters were universally reclassified as non-exempt.  Plaintiffs are similarly situated.

### C.  This Case Is Appropriate For Judicial Notice

As already explained, the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  Hoffmann-La

-12-

1  Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  Accordingly, district courts are encouraged to

2  become involved in the notice process early, to ensure "timely, accurate, and informative" notice

3  and to help maintain control of the litigation.  Id. at 171-72.  Court authorization of notice also

4  serves the "legitimate goal of avoiding a multiplicity of duplicative suits."  Id. at 172.  This case

5  is an appropriate case to send court-approved notice.

6       Prompt court action is needed because the claims of the potential opt-in plaintiffs are

7  being extinguished or diminished due to the running of the statute of limitations on their claims.

8  Unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms

9  is not tolled with the commencement of this action.  See Redman v. U.S. West Bus. Res., Inc.,

10  153 F.3d 691, 695 (8th Cir. 1998).  It continues to run on each individual's claim until he or she

11  files a consent form.  The consequence of this fundamental difference is self-evident—every day

12  that passes is a day of damages each potential opt-in plaintiff will be unable to recover.  This is

13  especially true where, as here, a company reclassifies employees prior to the inception of the

14  lawsuit.  Court-facilitated notice will prevent the continued erosion of these claims.  See, e.g.,

15  Kalish v. High Tech. Inst., 2005 WL 1073645, at *3 & n.1 (D. Minn. Apr. 22, 2005) (citing

16  Grayson v. K Mart Corp., 79 F.3d 1086, 1106 (11th Cir. 1996)).

17       **i.  The Court should order distribution of Plaintiffs' Proposed Notice**

18       Judicially authorized notice of a collective action under § 216(b) must be "timely,

19  accurate, and informative."  Hoffmann-La Roche, 493 U.S. at 172.  Plaintiffs' proposed judicial

20  notice will provide employees with an accurate description of this lawsuit, as well as their rights

21  under the Fair Labor Standards Act.  (See Helland Decl. Exh. P (notice and consent form).)  As

22  such, the proposed notice achieves the ultimate goal of providing employees accurate and timely

23  notice concerning the pendency of the collective action and should be adopted.

24       Plaintiffs request that the Court authorize notice in the form of: (1) a mailing of the notice,

25  by Plaintiffs' counsel, to all members of the putative collective class; (2) posting of the notice, by

26  Defendants, in a conspicuous location in all break/lunch rooms at its office locations; (3) posting

27  of the notice, by Defendants, in a conspicuous location on its intranet system; and (4) emailing of

28  the notice, by Plaintiffs' Counsel, to all members of the putative collective class.  Issuance of

-13-

notice through these methods will ensure that all potential class members are reached as soon as possible.  See Garcia v. Salamanca Group, 2008 WL 818532, at *5 (N.D. Ill. Mar. 24, 2008) (authorizing notice to be sent by mail and posted at defendant's restaurants); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 493 (E.D. Cal. 2006) (finding that first class mail combined with posting provided for the "best notice practicable" to the potential class); Veliz v. Cintas, Corp., 2004 WL 2623909, at *2 (N.D. Cal. 2004) (requiring employer to post notice and consent forms in all of its work sites).  Plaintiffs request that the notice period be set for 90 days, and further request that the Court authorize Plaintiffs to send a reminder notice to putative class members 45 days after the issuance of notice.

### ii.  The Court should order production of contact information for all underwriters

The Court should also order Defendants to provide Plaintiffs a list of all putative collective members and their contact information.  The identification of these individuals is critical for Plaintiffs to provide those individuals with notice of the action as contemplated by the FLSA.  See Hoffmann-La Roche, 493 U.S. at 170 (affirming that the district court correctly permitted discovery of the names and addresses of the putative class).  This is precisely the reason why the production of a list of potential class members is routinely disclosed in FLSA collective actions.  Id. at 165.

Accordingly, Plaintiffs respectfully requests that the within ten business days of the Court's order, Defendants be required to provide Plaintiffs' counsel with a list of all mortgage underwriters who are, or were, employed by Defendant at any time from three years prior to the date of issuance of notice and continuing to the present.  This should include each underwriter's (1) name, (2) job title, (3) last known address and telephone number, (4) last known personal email address, (5) dates of employment, (6) location of employment, (7) employee number, and (8) social security number (last four digits only).

1   IV.   CONCLUSION

2          For these reasons, Plaintiffs respectfully request that the Court grant their motion in its

3   entirety.

4

5   Dated: November 17, 2010                     NICHOLS KASTER, LLP

6                                                By:    s/ Matthew C. Helland
                                                        Matthew C. Helland
7
                                                OUTTEN & GOLDEN LLP
8
                                                ATTORNEYS FOR PLAINTIFFS AND
9                                               PROPOSED CLASSES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE**