1  MARTHA S. DOTY (CSBN 143287)
2  SAYAKA KARITANI (CSBN 240122)
   **ALSTON & BIRD LLP**
3  333 South Hope Street, Sixteenth Floor
   Los Angeles, California 90071
4  Telephone: (213) 576-1000
   Facsimile: (213) 576-1100
5  martha.doty@alston.com
   sayaka.karitani@alston.com

6  R. STEVE ENSOR (*Pro Hac Vice*)
   GLENN PATTON (*Pro Hac Vice*)
7  **ALSTON & BIRD LLP**
   1201 West Peachtree Street
8  Atlanta, GA 30309-3424
   Telephone: (404) 881-7000
9  Facsimile: (404) 881-7777
   glenn.patton@alston.com
10 steve.ensor@alston.com

11 LESLIE W. BRADENHAM (*Pro Hac Vice*)
   **ALSTON & BIRD LLP**
12 950 F. Street, N.W.
   Washington, DC 20004-1404
13 Telephone: (202) 239-3300
   Facsimile: (202) 239-3333
14 leslie.bradenham@alston.com

15 Attorneys for Defendant
   SUNTRUST MORTGAGE, INC.
16
17 ADDITIONAL ATTORNEYS ON
   FOLLOWING PAGE

18          **UNITED STATES DISTRICT COURT**
19          **NORTHERN DISTRICT OF CALIFORNIA**

20 Gary Gee, Roxanne Mazarakis, and Jody Soto,  )   Civil Case No. 3:10-CV-01509-RS
   individually, on behalf of others similarly      )
21 situated, and on behalf of the general public,    )   Hon. Richard Seeborg
                                                      )
22                                                    )   **NOTICE OF JOINT MOTION; JOINT**
                Plaintiffs,                           )   **MOTION TO APPROVE**
23                                                    )   **COLLECTIVE ACTION**
                                                      )   **SETTLEMENT AND DISMISSAL OF**
24         vs.                                        )   **CLAIMS; MEMORANDUM OF LAW**
                                                      )   **AND POINTS OF AUTHORITIES**
25 SunTrust Mortgage, Inc. and DOES 1-50,            )
   Inclusive,                                         )
26                                                    )   Date:      April 12, 2012
                                                      )   Time:      1:30 p.m.
27                Defendants.                         )   Crtrm:     3
                                                      )
28                                              i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

Please take notice that on April 12, 2012 if the Court permits, or alternatively on May 10, 2012, in the courtroom of the Honorable Richard Seeborg of the above-mentioned Court at 1:30 p.m., the parties will and hereby do jointly move this Court for the Proposed Order submitted herewith approving settlement of the claims at issue in this Fair Labor Standards Act ("FLSA") collective action and granting dismissal of the claims with prejudice.  In support of this Motion, the parties submit the accompanying Memorandum of Points and Authorities, the Declarations of R. Steve Ensor and Matthew C. Helland and the Proposed Order, filed concurrently herewith.

JOINT MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT – Case No. 3:10-CV-01509-RS

LEGAL02/33195158v2

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ...................................................................................................................1

    A. Relevant Procedural History ...........................................................................................1

    B. The Settlement.................................................................................................................2

III. ARGUMENT AND CITATION OF AUTHORITY ...........................................................5

    A. Standard for Approval of Settlement of FLSA Collective Action...................................5

    B. This Litigation Presented a Bona Fide Dispute Over Entitlement To Overtime
        Wages...............................................................................................................................6

    C. The Settlement Is A Reasonable Compromise Of Disputed Issues ................................7

    D. Plaintiffs' Counsel's Fees and Costs are Subject To Private Agreement with Their
        Clients and are Reasonable .............................................................................................9

IV. CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990 (N.D. Ind. 2010) ..................................10

Campanelli v. Hershey Co., No. C 08-1862 BZ, 2011 WL 3583597

   (N.D. Cal. May 4, 2011) ......................................................................................5, 6, 9, 10

Davis v. J.P. Morgan Chase & Co., 587 F.3d 529 (2d Cir. 2009) .................................................6

Faican v. Rapid Park Holding Corp., 2010 WL 2679903 (E.D.N.Y. July 1, 2010) ...................10

Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350 (11th Cir. 1982.).........................................6, 7

Officers for Justice v. Civil Service Commission, 688 F.2d 615 (9th Cir. 1982).........................8

Overnight Motor Transp. Co. v. Missel, 316 U.S. 572 (1942) .....................................................7

Russell v. Wells Fargo and Company, 672 F. Supp. 2d 1008 (N.D. Ca. 2009) .........................7

Scott v. Memory Co., LLC, 2010 WL 4683621 (M.D. Ala. Nov. 10, 2010) ............................10


**Federal Statutes**

29 U.S.C. § 201 ...............................................................................................................1

29 U.S.C. § 219.................................................................................................................5

29 U.S.C. § 255.................................................................................................................7, 9

1

## **MEMORANDUM OF LAW AND POINTS OF AUTHORITIES**

2    Defendant SunTrust Mortgage, Inc. ("STM" or "Defendant") together with named plaintiffs

3 Gary Gee, Roxanne Mazarakis, and Jody Soto and other individuals who have opted in to this action

4 ("Plaintiffs") respectfully bring this joint motion requesting that the Court (1) approve their

5 settlement of this collective action overtime case brought under the Fair Labor Standards Act

6 ("FLSA"), 29 U.S.C. § 201 *et seq.* and (2) dismiss the action with prejudice in its entirety, showing

7 the Court as follows:

8  I. INTRODUCTION

9    The instant case, *Gary Gee, et al. v. SunTrust Mortgage, Inc.*, Case No. 3:10-CV-01509-RS,

10 as amended (the "Action"), is a nationwide collective and putative class action lawsuit asserting

11 collective and class action claims under the FLSA, the California Labor Code, and the California

12 Business and Professions Code.  Following extensive litigation of the matter, the Parties have

13 entered into a confidential stipulation of settlement, whereby all claims of the Plaintiffs are settled

14 and released.  The settlement does not include a Rule 23 class.  The Parties now seek the Court's

15 approval of the settlement as required by the FLSA.  As set forth below, the Court should approve

16 the Parties' settlement because it is a reasonable compromise of a bona fide dispute under the FLSA.

17  II. BACKGROUND

18   A. Relevant Procedural History.

19    Plaintiffs filed their Amended Complaint in this nationwide collective and putative class

20 action lawsuit on June 9, 2010, asserting various collective and class action claims under the FLSA,

21 the California Labor Code, and the California Business and Professions Code, all hinging on

22 Plaintiffs' assertion that STM's Mortgage Underwriters were misclassified as exempt under

23 applicable federal and state law.  (Dkt. # 19).  The California state law claims were asserted on

24 behalf of named plaintiffs Gary Gee, Roxanne Mazarakis, and Jody Soto and those other Plaintiffs

25 who worked for SunTrust in the State of California in the four years prior to the filing of the

26 Complaint (the "California Plaintiffs").  In its Answer, STM asserted, among other defenses, that its

27 Mortgage Underwriters qualify for the administrative exemption provided for in the FLSA and

28

1    applicable California wage and hour laws. (*See* Answer Dkt. 23).

2        On November 17, 2010, Plaintiffs filed a Motion for Conditional Class Certification and

3    Distribution of Judicial Notice. (Dkt. #49). The Court entered an Order granting Plaintiffs' Motion

4    for Conditional Certification on February 18, 2011, conditionally certifying a collective class

5    consisting of all persons employed by STM in the United States as a Mortgage Underwriters 1, 2, or

6    3 at any time between February 18, 2008 and July 11, 2010. (Dkt. #54). There are currently 122

7    Plaintiffs included in the lawsuit. (Ensor Decl. ¶ 3). Plaintiffs have not moved for certification of the

8    alleged California wage and hour Rule 23 class and do not intend to do so. (*Id.*).

9        The parties engaged in considerable discovery both before and after this case was

10   conditionally certified, which included written interrogatories served by both Plaintiffs and

11   Defendant, requests for production of documents served by both Plaintiffs and Defendant,

12   approximately 11,300 pages of documents produced by both Plaintiffs and Defendant, and the

13   depositions of seven witnesses. (Ensor Decl. ¶ 4). On July 19, 2011, the parties held a mediation

14   session in Atlanta, Georgia, in an effort to resolve the case, and prior to this mediation engaged in an

15   informal exchange of additional information. (*Id.* at ¶ 5). The mediation proved unsuccessful, and

16   on August 11, 2011, Plaintiffs filed a motion for partial summary judgment, asking for a ruling on

17   Defendant's administrative exemption affirmative defense and on the proper method of calculating

18   damages. (*Id.* at ¶¶ 5-6; Dkt. #106). On October 14, 2011, the Court issued an order denying

19   Plaintiffs' motion for partial summary judgment without prejudice to reassert the motion after the

20   close of non-expert discovery. (*Id.* at ¶ 6; Dkt. #114). While Plaintiffs' motion for partial summary

21   judgment was pending both parties served additional interrogatories and requests for production, and

22   thirty-three (33) additional depositions were noticed to take place prior to the close of non-expert

23   discovery on January 9, 2012. (*Id.* at ¶ 4). As set out below, however, the parties reached an

24   agreement to settle the case prior to the discovery cutoff.

25       B.  The Settlement.

26       Throughout the litigation, counsel for the parties vigorously pursued their positions and the

27   rights of their clients through extended legal and factual analysis, discovery, and information

28

exchanges, and engaged in good faith, arms-length negotiations regarding settlement.  (Ensor Decl. ¶ 7).  Although the July 2011 mediation was unsuccessful, the parties subsequently resumed settlement discussions and ultimately reached an agreement on December 22, 2011, subject to the Court's approval, to resolve the claims of all 122 Plaintiffs, for a total of $2,400,000.00 (the "Settlement Amount").  (*Id*. at ¶ 8).  The agreement was finalized and memorialized in a confidential Stipulation of Settlement (the "Settlement") executed on January 27, 2012.  (*Id*. at ¶ 9).[1]  Pursuant to the Settlement, the Settlement Amount is to be allocated as follows:

- A total of $800,000.00 of the Settlement Amount (one-third of the settlement amount) is allocated to Plaintiffs' counsel's attorneys' fees pursuant to private agreements between Plaintiffs and Plaintiffs' counsel (the "Attorneys' Fees").

- A sum of $23,000.00 is allocated to Plaintiffs' Counsel's costs (the "Costs").

- A sum of $4,029.96 constitutes a contingency fund (the "Contingency Fund") designed to effectuate the settlement, with any remaining amounts to be contributed to a legal aid organization as selected by agreement of Plaintiffs' Counsel and SunTrust's Counsel.

- The remainder of $1,572,970.04 is the amount to be distributed among the named Plaintiffs and opt-ins (the "Allocation Fund"), pursuant to an allocation formula in the settlement agreement.   The formula takes into account   (i) the date the

---

[1]  During the drafting of this motion, the parties discovered that they had a misunderstanding over the issue of whether the Settlement would be filed with the Court.  Defendant believes that the parties agreed that the Settlement would not be filed with the Court, but that the parties would include in their joint motion pertinent details about the terms of the settlement including, *inter alia*, the total amount of the settlement payments being made to the Plaintiffs, the manner in which the parties had calculated the settlement payments to each Plaintiff, and the total amount being paid to Plaintiffs' counsel in fees and costs, such that the Court could determine that the Settlement is a fair and reasonable resolution of a bona fide dispute.  Conversely, Plaintiffs do not recall such an agreement and, further, believe that the Settlement should be filed with the Court.  Plaintiffs are also prepared to provide the Court with further briefing on the reasonability of the settlement payments to individual Opt-In Plaintiffs in light of potential damages.  Notwithstanding their misunderstanding over this issue, it was the parties' desire to go ahead and file their joint motion to approve the settlement in accordance with the Court's April 5, 2012 deadline, with the understanding that they would supplement this motion if the Court orders that the Settlement is filed with the Court for review.

Plaintiff's consent form was filed with the Court; (ii) his/her dates of employment; (iii) his/her "regular rate" of pay calculated based on Defendant's payroll records, including all salary and incentive compensation; (iv) overtime calculated at one and one-half times each Plaintiff's regular rate of pay for all overtime hours worked, discounted by 50% in recognition of the current legal uncertainty as to whether the "time and a half" or the "half-time" method of calculating overtime payments is applicable; (v) a twenty percent reduction for holiday and vacation weeks; and (vi) an assumption of 6.2 hours of overtime per week. Each Plaintiff who worked during the third year of his/her FLSA statute of limitations period was allocated $625.00 for that third year. California Plaintiffs were allocated overtime payments as outlined above for the four year statute of limitations under California law. In exchange for the release of the additional California state law claims alleged in the case, the individual settlement amount for each California Plaintiff was also increased by 25%. Each Plaintiff who joined the case and did not later withdraw will receive at least $625.00. Lastly, because the law allows for liquidated damages, each Plaintiff's settlement amount was doubled.

(*Id.*). The Settlement reflects a compromise between the parties, with each party taking into account a wide range of possible outcomes that would be impacted by the number of overtime hours that each Plaintiff claimed to have worked, the method of calculating the overtime payment, the question of whether the Court would award liquidated damages, and numerous other issues. The Settlement does not include a Rule 23 California Class.

On January 31, 2012, Plaintiffs' counsel sent a Settlement Offer and Release Form to each of the 122 Plaintiffs, which explained the terms of the settlement, set forth each Plaintiff's individual settlement offer, and set forth the amount paid on each Plaintiff's behalf for attorneys' fees and costs associated with settlement. (Helland Decl. at ¶ 2). Plaintiffs' counsel were available to answer any questions from Plaintiffs regarding the potential settlement, and Plaintiffs were given until March

JOINT MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT – Case No. 3:10-CV-01509-RS

LEGAL02/33195158v2

16, 2012, to return the Release Forms.  (Helland Decl. at ¶ 3).  Plaintiffs' counsel made diligent efforts to obtain timely responses from each Plaintiff, and Plaintiffs' counsel ultimately received signed Release Forms from all Plaintiffs.  (*Id.*).

Pursuant to the releases contained in the Release Form and in consideration for the individual settlement payments from SunTrust, each of the 122 Plaintiffs waives any appeal from an order approving settlement and dismissing the case with prejudice, and releases and forever discharges SunTrust and other Released Parties from any and all wage and hour claims and causes of action of any nature whatsoever, known or unknown, that have arisen or could have arisen at any time prior to the date the Release Form was executed (the "Released Claims").  (Ensor Decl.  at ¶ 10).  For purposes of the releases, the "Released Parties" mean Defendant, and each of its present and former officer, directors, employees, agents, attorneys, predecessors, successors, assigns, shareholders, parents, subsidiaries, affiliated entities, spouses, children, representatives, transferors, transferees, partners, principals, trustees, executors, members, insurers, investors, servants, beneficiaries, devisees, guardians, heirs, and all other persons, firms, corporations, divisions, associations, limited liability companies, and/or partnerships, associated therewith or related thereto.  (*Id.*).  Under the agreement, if the Court approves the Settlement, then SunTrust will deliver the settlement proceeds to Plaintiffs' counsel for distribution within 30 days after the date of entry of the Order and Final Judgment.  (*Id*. at ¶ 11).

III.  ARGUMENT AND CITATION OF AUTHORITY

A.  Standard for Approval of Settlement of FLSA Collective Action.

Because this settlement does not involve a Rule 23 class, the traditional Rule 23 settlement review process does not apply.  *Campanelli v. Hershey Co.*, No. C 08-1862 BZ, 2011 WL 3583597, *1 (N.D. Cal. May 4, 2011).  However, because FLSA rights generally cannot be waived, settlement of private actions for back wages pursuant to 29 U.S.C. § 219(c) must be approved by the district court.  *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982.)  The decision of whether to approve a collective action settlement lies within the trial court's discretion.  *See id.* at 1350.  In order to approve a settlement proposed by an employer and employees, a court must

determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355; *Campanelli*, 2011 WL 3583597, at *1; *Lee v. The Timberland Co.*, No. C 07-2367 JF, 2008 WL 2492295, * 2 (N.D. Cal. June 19, 2008); *Yue Zhou v. Wang's Rest.*, No. C 05-0279 PVT, 2007 WL 172308, *2 (N.D. Cal. Jan. 17, 2007). If a settlement in an employee FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354; *Yue Zhou*, 2007 WL 172308, *2. Court approval of FLSA settlements helps ensure that the resolution is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354. Settlements of court actions are permissible because "initiation of the action by the employees provides some assurance of an adversarial context." *Id.*

   B.   This Litigation Presented a Bona Fide Dispute Over Entitlement To Overtime Wages

   The parties' briefing on Plaintiffs' Motion for Partial Summary Judgment highlights two critical and hotly contested issues impacting Plaintiffs' alleged right to overtime payment. First, with respect to FLSA coverage and potential liability, Plaintiffs contend that SunTrust's mortgage underwriters are non-exempt "production" workers under the FLSA. In support of that position, Plaintiffs rely on the Second Circuit's application of the administrative production dichotomy in *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 532 (2d Cir. 2009). In response, Defendant contends that the work of its mortgage underwriters relates to the company's management policies and general business operations and that the position thus falls within the administrative exemption pursuant to applicable DOL regulations, Ninth Circuit precedent, and other relevant authority nationwide. With respect to the *Davis* decision, Defendant has put forth argument and evidence that the *Davis* case was wrongly decided and that, even under *Davis*, SunTrust's mortgage underwriters are distinguishable from those underwriters in *Davis* deemed to be performing non-exempt work.

   Second, with respect to damages, Plaintiffs have argued that they are entitled to time-and-one-half their regular rate of pay for each overtime hour worked. In support of that position,

LEGAL02/33195158v2

Plaintiffs rely on the plain language of the FLSA, an interpretive bulletin from the DOL and the holding in *Russell v. Wells Fargo and Company*, 672 F. Supp. 2d 1008 (N.D. Ca. 2009), where Judge Claudia Wilken held that the half-time method of calculating overtime damages should not be utilized in a misclassification suit.  In response, Defendant argued that the Supreme Court's decision in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) makes clear that the proper measure of damages in a misclassification case is the half-time methodology and further demonstrated that every Circuit Court to have addressed the issue since *Overnight Motor* has ordered that damages be measured by half-time in FLSA misclassification cases.

While the parties have initially briefed these issues of the applicability of the administrative exemption and the appropriate method of calculating damages, the Court ultimately dismissed Plaintiffs' Motion for Partial Summary Judgment without prejudice so that additional relevant discovery could be conducted and the motion could be determined on a full record.  Thus, it is clear that a bona fide dispute still exists as to these significant points.

In addition to the administrative exemption and damages calculations issues, there are numerous other important and contested issues that would need to be determined in the event litigation should proceed and that further evidence a bona fide dispute as to the amount of wages due (if any).  These include the availability of liquidated damages and a three-year statute of limitations (as opposed to a two year statute for non-willful violations under 29 U.S.C. §255a), as well as the amount of overtime hours the Plaintiffs actually worked.

This litigation has most certainly been adversarial.  Plaintiffs' aggressive litigation of the claims in this case and the contested motion practice throughout the litigation support a conclusion that this settlement is not "a mere waiver of statutory rights brought about by an employer's overreaching."  *Lynn's Food Stores*, 679 F.2d at 1354.  This case contains bona fide disputes over many issues pertaining to employees' rights to overtime pay.  Accordingly, approval of the above-described compromise of Plaintiffs' FLSA claims is appropriate.

C.   The Settlement Is A Reasonable Compromise Of Disputed Issues

"It is well-settled law that a cash settlement amounting to only a fraction of the potential

7

recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." Id. The Court should approve the Settlement because the payments to Plaintiffs are substantial, and they represent a reasonable compromise of Plaintiffs' FLSA claims.

There are many factors in dispute which affect the calculation of overtime payments allegedly due to Plaintiffs. The individual settlement offer to each Plaintiff was based on (i) the date the Plaintiff's consent form was filed with the Court; (ii) his/her dates of employment; (iii) his/ her "regular rate" of pay calculated based on Defendant's payroll records, including all salary and incentive compensation; (iv) overtime calculated at one and one-half times each Plaintiff's regular rate of pay for all overtime hours worked, discounted by 50% in recognition of the current legal uncertainty as to whether the "time and a half" or the "half-time" method of calculating overtime payments is applicable; (v) a twenty percent reduction for holiday and vacation weeks; and (vi) an assumption of 6.2 hours of overtime per week. Additionally, the FLSA provides a third year of damages if Plaintiffs can prove Defendant's conduct was "willful." Each Plaintiff who worked during the third year of his/her FLSA statute of limitations period was allocated $625.00 for that third year. California Plaintiffs were allocated overtime payments as outlined above for the four year statute of limitations under California law. In exchange for the release of the additional California state law claims alleged in the case, the individual settlement amount for each California Plaintiff was also increased by 25%. Each Plaintiff who joined the case and did not later withdraw will receive at least $625.00. Lastly, because the law allows for liquidated damages, each Plaintiff's settlement amount was doubled.

The compromises in the settlement allocation amounts are reasonable in light of the risks of litigation. For example, the fifty percent reduction for risk of loss on the overtime calculation methodology issue reflects the uncertainty on this issue. The parties' respective positions were

outlined thoroughly in the briefing on Plaintiffs' Motion for Partial Summary Judgment and, regardless of this Court's resolution the issue, that ruling would have been subject to the uncertainty of an appeal.  On the other hand, the settlement agreement calls for full payment of liquidated damages, which effectively minimized the risk of loss on the overtime calculation methodology by doubling the settlement payments to the Plaintiffs .  Inclusion of liquidated damages is also significant because Defendant would have certainly argued that any measure of liquidated damages would have been inappropriate, given their good faith defenses.  The issue of holiday and vacation days was central to the negotiations of this settlement.  If an employee misses a day of work due to a holiday or vacation, and consequently works less than 40 hours in a week, the employee would not be due any overtime for that week.  SunTrust observes banking holidays and has a generous vacation policy.  The allocation formula reduces the damages in recognition of these holidays.  Lastly, Plaintiffs believe they faced a very high risk of loss on the availability of a third year of damages. *See* 29 U.S.C. § 255a.  Accordingly, there is a strong possibility that Plaintiffs would not have received any payment for the third year of their statute of limitations.  A flat amount of $1,250 for the third year of claims is an appropriate and reasonable amount, given the risk these claims faced.

Given all of the factors affecting the damage calculations, in addition to uncertainty regarding liability in the first place, the amounts paid in the settlement are eminently reasonable. This is especially true because the amounts represented by the allocation formula are free and clear of any attorneys' fees and costs.  The Court should find that the settlement is a reasonable resolution of a bona fide dispute, not a mere waiver of claims brought on by an employer's overreaching.

D.  Plaintiffs' Counsel's Fees and Costs are Subject To Private Agreement with Their Clients and are Reasonable.

The resolution of this case "is a privately negotiated settlement." *Campanelli*, 2011 WL 3583597, at *1 (approving confidential settlement under FLSA without requiring public disclosure of the settlement amounts).  Unlike a Rule 23 class, where class members are part of a certified class unless they decide to opt-out, each Plaintiff in this litigation affirmatively chose to join the case. In so doing, they chose to be represented by Plaintiffs' counsel.  Plaintiffs' Counsel took this case on a

contingency basis.  (Helland Decl. ¶ 4).  Therefore, counsel did not receive any payment for their time spent litigating the case, nor did they receive reimbursement for their out of pocket costs during the litigation.  (*Id.*).  Plaintiffs' counsel alone undertook the financial risk of unsuccessful litigation.  (*Id.*).

Plaintiffs' counsel has legal services agreements with 70 of the 122 Opt-In Plaintiffs in this litigation.  (*Id.* at ¶ 5).  Those legal services agreements expressly provide for payment of attorneys' fees to counsel in the amount of one-third of any settlement.  (*Id.*).[2]  Moreover, each Plaintiff was advised of the amount of fees paid on his/her behalf as part of the settlement, and each signed an individual release agreeing to the terms of the settlement.  The Court should honor those private agreements and approve the payment of attorneys' fees on a contingency basis.  *See Scott v. Memory Co., LLC*, 2010 WL 4683621 (M.D. Ala. Nov. 10, 2010) (settlement approved with attorneys' fees paid according to plaintiff's contingency agreement with his attorney); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (33.3% of the total settlement amount is appropriate in an FLSA action); *Faican v. Rapid Park Holding Corp.*, 2010 WL 2679903 (E.D.N.Y. July 1, 2010) (approving fee award of 33 1/3 percent in an FLSA action).  The Court's obligation on approval of an FLSA settlement is to determine that attorneys' fees are reasonable.  *Campanelli*, 2011 WL 3583597, at *1.  Plaintiffs' counsel litigated this case aggressively and effectively, which resulted in substantial monetary relief for Plaintiffs.  The Court should find that the contingency arrangement is a reasonable payment of attorneys' fees.[3]

Plaintiffs' counsel's private agreements with their clients provide for reimbursement of litigation costs in addition to payment of attorneys' fees.  (*Id.* at ¶ 6).  To date, Plaintiffs have incurred $23,670.94 in costs.  (*Id.* at ¶ 6 and Exh. 1).  Those costs include photocopies, filing fees,

---

[2] Although the remaining Plaintiffs did not return legal services agreements, they did return consent forms choosing to join this case and to be represented by Plaintiffs' counsel.

[3] Cases in this district approving FLSA-only settlements do not undertake the typical Rule 23 attorneys' fees analysis.  See *Campanelli*, 2011 WL 3583597, at *1; *Lee*, 2008 WL 2492295, at *2. If the court decides to apply a different standard to its review of Plaintiffs' counsel's fees, Plaintiffs' counsel requests leave to submit additional briefing.

1    research charges, travel costs, mediation fees, case advertising, and correspondence with clients.

2    (*Id.*).  Plaintiffs' counsel incurred these costs on behalf of Plaintiffs, and pursuant to the settlement

3    agreement.  The Court should honor Plaintiffs' counsel's private agreements with its clients and

4    approve the reimbursement of $23,000 of costs through this settlement.

5        IV. <u>CONCLUSION</u>

6           This FLSA collective action settlement is a product of an arms-length negotiation between

7    counsel that has resolved a bona fide dispute over wages.  The Settlement provides all Plaintiffs with

8    substantial monetary relief that clearly represents a reasonable compromise of the parties' dispute.

9    For these reasons, and those set forth above, the Court should approve the parties' Settlement and the

10   Plaintiffs' releases and dismiss this action, with prejudice, consistent with the Proposed Order

11   submitted herewith.

12   DATED:  April 5, 2012            <u>s. R. Steve Ensor</u>
                                      MARTHA S. DOTY (CSBN 143287)
13                                    SAYAKA KARITANI (CSBN 240122)
                                      **ALSTON & BIRD LLP**
14                                    333 South Hope Street, Sixteenth Floor
                                      Los Angeles, California  90071
15                                    Telephone:  (213) 576-1000
                                      Facsimile:  (213) 576-1100
16                                    martha.doty@alston.com
                                      sayaka.karitani@alston.com
17
                                      R. STEVE ENSOR (*Pro Hac Vice*)
18                                    GLENN PATTON (*Pro Hac Vice*)
                                      **ALSTON & BIRD LLP**
19                                    1201 West Peachtree Street
                                      Atlanta, GA 30309-3424
20                                    Telephone: (404) 881-7000
                                      Facsimile:  (404) 881-7777
21                                    glenn.patton@alston.com
                                      steve.ensor@alston.com
22
                                      LESLIE W. BRADENHAM (*Pro Hac Vice*)
23                                    **ALSTON & BIRD LLP**
                                      950 F. Street, N.W.
24                                    Washington, DC 20004-1404
                                      Telephone: (202) 239-3300
25                                    Facsimile:  (202) 239-3333
                                      leslie.bradenham@alston.com
26
                                      Attorneys for Defendant
27                                    SUNTRUST MORTGAGE, INC.

28

DATED:  April 5, 2012

s/ Matthew C. Helland
MATTHEW C. HELLAND (CSBN 250451)
ROBERT LOREN SCHUG (CSBN 249640)
**NICHOLS KASTER, LLP**
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238
helland@nka.com
rschug@nka.com

ADAM W. HANSEN (*Pro Hac Vice*)
CHARLES G. FROHMAN (*Pro Hac Vice*)
TIMOTHY C. SELANDER (*Pro Hac Vice*)
**NICHOLS KASTER, LLP**
4600 IDS Center , 80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
ahansen@nka.com
frohman@nka.com
selander@nka.com

JUSTIN M. SWARTZ (*Pro Hac Vice*)
RACHEL BIEN (*Pro Hac Vice*)
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
jms@outtengolden.com
rmb@outtengolden.com

Attorneys for Plaintiffs

12
JOINT MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT – Case No. 3:10-CV-01509-RS

LEGAL02/33195158v2